DAVIS, Judge.
Petitioner T.J.S., a juvenile, filed her petition for an emergency writ of habeas corpus seeking release from the detention center where she was being held under a secure detention order. We denied relief in a previous order, and this opinion now follows.
T.J.S. was placed on juvenile probation on May 5, 2011, for two misdemeanor offenses. The conditions of TJ.S.’s probation included condition three, requiring that “[t]he child must not change or leave his/her residence, school, or place of employment without the consent of his/her parents and juvenile probation officer,” and condition five, providing that “[t]he child must cooperate fully and maintain contact with his/her probation officer.”
On August 3, 2011, the probation officer visited the home where T.J.S. was supposed to be residing but could not locate her there. TJ.S.’s mother reported T.J.S. as a runaway, stating that T.J.S. had left without her permission and that she did not know T.J.S.’s whereabouts. The probation officer thereafter filed his affidavit of violation of probation, alleging that T.J.S. had violated conditions three and five of her supervision.
On August 9, 2011, the trial court issued an order to take T.J.S. into custody. This order was executed on August 21, 2011, and the child was taken to the Hillsbor-ough County Juvenile Assessment Center and held in secure detention until the detention hearing the following day. At that hearing, it was determined that TJ.S.’s Risk Assessment Instrument (RAI) score was thirteen points. Based on this score, the trial court entered an order holding her in secure detention until the hearing on the violation of probation (VOP). It is this order that T.J.S. now challenges.
T.J.S. argued below, and argues again in her petition for writ of habeas corpus, that the RAI improperly classifies her as an absconder — resulting in ten of the thirteen assessed points. She maintains that she does not meet the requirements for that classification and that without the erroneous assessment of these points, the RAI score would have required that she be released pending her VOP hearing.
T.J.S. further contends that because the Florida Statutes do not define “absconder,” the definition of the term provided in the Department of Juvenile Justice practice materials should be used in determining whether absconder points can be assessed against a juvenile pursuant to section 985.255, Florida Statutes (2010). She maintains that the State failed to prove her absconder status as provided in the Department’s materials because it *1106 failed to show that she was hiding or absenting herself with the intent to avoid legal process. We disagree.
It is true that the legislature has not defined the word “absconder” for the purposes of scoring a juvenile RAI, and we agree that without such a definition, the trial court should look to the definitions provided in the Department’s practice manuals. But based on the testimony presented at the detention hearing, we conclude that T.J.S. met the Department’s definition of absconder, which is as follows:
1. A youth is considered an absconder if he/she “goes in a clandestine manner out of the jurisdiction of the courts in order to avoid legal process[,”] or “to hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process[.”]
a. The juvenile probation officer must have cause to believe that the youth is deliberately avoiding supervision or has removed himselfiherself from the home or community to avoid supervision and the legal process. A youth reported by the parent(s)/guardian(s) to have run away without the parent(s’)/guardian(s’) knowledge of their whereabouts, is considered to be an absconder.
b. There must be intent to avoid the legal process. Simple absence or not appearing for appointments does not constitute absconding, but may constitute a technical violation of the conditions of probation.
B.M. v. Dobuler, 979 So.2d 308, 314 (Fla. 3d DCA 2008) (quoting Department of Juvenile Justice, Probation & Community Corrections Handbook, 6-27-28 (2006) (emphasis omitted)).
It is undisputed that T.J.S. was ordered not to leave or change her address without the permission of her parents and her probation officer. Based on the documents considered at the detention hearing, it can be determined that she left her home at 12:45 p.m. on August 3 and did not return home of her own accord. Her mother had reported her as a runaway and did not know her whereabouts until the child was apprehended by law enforcement on August 21. Accordingly, the State established that during this time the child was not under the supervision of her parents or her probation officer as required by the court ordered terms of her probation.
The record also shows that the probation officer left messages with relatives and friends instructing T.J.S. to contact him. It was not until she was apprehended by law enforcement on the pick-up order that her parents or probation officer had any contact with her. These facts support the finding that she did hide, conceal, or absent herself clandestinely because she failed to advise her parents or her probation officer of her whereabouts or well-being or to otherwise contact them. From this it can be inferred that T.J.S. was attempting to “avoid the legal process.”
At both the detention hearing and in the instant petition, counsel for T.J.S. argues that the Department handbook’s use of the term “the legal process” is more narrow than the definition required to detain T.J.S. as an absconder. Counsel maintains that “the intent to avoid the legal process” means that the State must show the intent “to avoid arrest, prosecution, service or process.” Counsel further argues that the Department handbook’s definition requires that the State show that T.J.S. concealed herself “with the intent to avoid the means of legal process.” As support for this argument, counsel cites the Third District’s B.M. opinion, which rephrased the definition of absconder to require that the State show that the juvenile was absent in an “effort to avoid judicial process.” 979 So.2d at 314 (emphasis added). In that *1107 case, the Third District concluded that the frequent occasions on which B.M. ran away did not meet such a definition. Id. As support for this conclusion, the Third District relied on the portion of the Department’s definition of absconder that states that simple absence and not appearing for appointments do not show the intent to avoid the legal process. Id.
But Respondent here argues that the term “intent to avoid the legal process” means the intent to avoid the requirements of the probation order entered by the court. The trial court accepted the State’s definition below in assessing the absconder points against T.J.S., stating as follows:
It’s not like she was over, staying with her grandmother, where everybody knew where she was. She was avoiding her JPO. She was avoiding her mother. She was not available to be supervised, as she is required to be. And she was apparently, secreting herself, hiding herself, concealing herself in a clandestine-manner, out of the jurisdiction [of the] court, to avoid the legal process.
We agree with the trial court. We do not read the Department handbook’s definition to require a showing that the minor’s absence displays an intent to avoid judicial process, i.e., the service of court documents, arrest, etc. Rather, we read the phrase “the legal process” to encompass the requirements governing a child’s conduct imposed by the trial court in an order of probation. See § 985.255(l)(a), (3)(a).
A juvenile probation order results from a minor’s prior misconduct, and the probation program is a form of supervision that is designed to provide correction and rehabilitation as an alternative to removal from the home and placement in a residential facility. See § 985.08(48) (“‘Probation’ means the legal status of probation created by law and court order ... in which the freedom of the child is limited ... in lieu of commitment to the custody of the department.”). For the juvenile to be able to leave home without the permission or knowledge of the parents for weeks at a time totally deprives the child of the supervision that is the essence of a program of probation. Cases such as B.M., where a child merely absents himself overnight or fails to keep a curfew, are correct in suggesting that such absences are distinguishable from those that are indicative of the intent to avoid court ordered supervision and thus the legal process. Such a reading of B.M. does not require us to limit the scope of the legal process to instances of judicial process and is in keeping with the Department handbook’s definition of absconder and the use of the term as applied to juveniles who purposefully absent themselves from court ordered supervision.[1]
Applying this reasoning, we conclude that T.J.S. did absent herself in such a manner and for such a time as to provide the trial court with a basis to infer that her intent was to avoid supervision and the legal process as outlined in her probation order. Accordingly, there was sufficient competent evidence presented to the trial court to support the trial court’s finding that T.J.S. was an absconder, and the ten points applied to her RAI for absconding were not in error.
*1108 T.J.S. thus was properly subjected to placement in secure detention, and her petition is denied.
Denied; conflict certified.
BLACK, J., concurs.
CASANUEVA, J., concurs in result only.

. To the extent that our reading of the definition of absconder could be read to differ with that of the Third District in B.M., by not limiting the legal process solely to instances of judicial process, we certify conflict. Additionally, we would suggest that the legislature should seriously consider providing the trial courts with a statutory definition of absconding for use in completing the RAIs for the determination of when secure detention is appropriate.